# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JOSEPH McSPADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00250-SGC |
| ) | |
| ANDREW SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**[1]

Th plaintiff, Joseph McSpadden, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). (Doc. 1.)[2] McSpadden timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 7).

[2] Citations to the transcript ("Tr.") use page numbers assigned by the Commissioner to the record. Citations to other, non-transcript documents refer to the document and page number assigned by the court's electronic document system, CM/ECF.

## I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

McSpadden was forty-four years old at the time of his disability onset and forty-six years old at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ"). (Tr. at 27, 135.) McSpadden speaks English, has a high school education, and attended junior college but never received his associate degree. (Tr. at 40, 151.) McSpadden's past work experience includes working as a post office clerk. (Tr. at 41.) McSpadden filed the instant application on March 20, 2017, alleging a disability onset date of March 11, 2017. (Tr. at 18, 151.) McSpadden claimed disability due to anxiety, depression, and narcolepsy. (Tr. at 151.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on

the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found McSpadden met the insured status requirements of the Social Security Act through December 31, 2022. (Tr. at 20.) The ALJ then determined McSpadden had not engaged in SGA from his alleged onset date of March 11, 2017. (*Id*.)

The ALJ determined McSpadden has the following severe impairments: chronic obstructive pulmonary disease ("COPD") and narcolepsy based on the requirements set forth in the regulations. (*Id*.) 20 C.F.R. § 404.1520(c). However, the ALJ found McSpadden does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ( 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. at 22.) The ALJ found the record did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to equal the criteria of any listed impairment and no acceptable medical source concluded McSpadden's impairments medically equal a listed impairment. (Tr. at 22.) McSpadden's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 23.) The ALJ determined McSpadden has the following RFC:

> To perform medium work as defined in 20 CFR 404.1567(c) except occasional climbing of ladders, ropes or scaffolds; and he must avoid even moderate exposure to hazards such as open flames, unprotected heights and dangerous moving machinery.

(Tr. at 22.)

According to the ALJ, McSpadden remained capable of performing his past relevant work as a Post Office Supervisor and a Post Office Clerk. (Tr. at 26.) The ALJ concluded his findings by stating McSpadden has not been under a disability, as defined in the Social Security Act, from March 11, 2017, the alleged onset date, through the date of his decision, May 22, 2019. (Tr. at 26-7.) The Appeals Council denied McSpadden's request for review. (Tr. at 1-3.) McSpaden timely filed the instant appeal. (Doc. 14.)

## II.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  DISCUSSION

On appeal, McSpadden contends the ALJ's decision should be reversed and remanded for reasons that fall into two categories: (1) the ALJ failed to properly evaluate the opinion of treating physician Dr. Anthony Sims; and (2) the ALJ

improperly rejected the subjective testimony of McSpadden.

### A. Weight to Medical Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"; 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you"; and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined

you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding "good cause" existed where the opinion was contradicted by other notations in the physician's own record). In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are,

instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). S*ee also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (recognizing that although a claimant's physician may state he is "disabled" or "unable to work," "the agency will nevertheless determine disability based upon the medical findings and other evidence."). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

McSpadden contends the ALJ failed to provide sufficient reasons for giving partial weight to the opinion of Dr. Sims regarding his inability to work due to hypersomnolence. He argues the ALJ erroneously found Dr. Sims's opinion internally inconsistent and, as a result, incorrectly gave the opinion only partial weight. However, the ALJ properly explained he afforded Dr. Sims's opinion "partial weight" because it was "inconsistent with the record of evidence." (Tr. at 26.)

On a form completed by Dr. Sims on February 16, 2016, he noted that McSpadden had a history of anxiety and depression, which were stable with his medication regimen but caused him to experience hypersomnolence. (Tr. at 288-91.) McSpadden's sleep apnea also contributed to his hypersomnolence. (*Id.*) Dr.

Sims opined McSpadden would require a scheduled appointment one day every six months and would occasionally be late to work one or two times per week for about a half hour. (Tr at 290.) However, on a subsequent form completed and signed the same day, there were additional dates of treatment filled in and an increased amount of frequency of flare-ups from being late one to two times per week to four to five written over the top of the other form. (Tr. at 283.) Dr. Sims completed an additional form in July 2017 that contained similar findings aside from an adjustment of four to five flare-ups per week to five to six flare-ups per week. (Tr. at 277-80.) Although Dr. Sims noted an increase in weekly flare-ups, McSpadden's condition remained unchanged. (*Id.*) Despite recording an increase in frequency of flare-ups, Dr. Sims only prescribed McSpadden with medication, advised him to change his diet, exercise, and lose weight; Dr. Sims never recommended surgery or other more aggressive treatment. (Tr. at 249-97, 302, 329-65, 370-73, 960-94.) The second form completed in February 2016 stated McSpadden "[would] not be totally incapacitated" for a single continuous period of time due to his medical condition, including any time for treatment and recovery. (Tr. at 283.) The ALJ correctly points out these findings are inconsistent with the record of evidence, which rarely, if ever, reflects McSpadden was unable to make his doctor's appointments on time or struggled with alertness on exam. (Tr. at 26.)

Dr. Sims also opined McSpadden should stay out of work because going back would be detrimental to his health. (Tr. 251.) The ALJ properly gave this opinion little weight, as McSpadden's ability to work is an issue reserved for the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d). Further the statement is inconsistent with Dr. Sims's own findings and his conservative treatment. (Tr. at 26.)

As shown above, the ALJ articulated reasons for giving partial weight to the opinion of Dr. Sims, and substantial evidence supports those reasons.

### B. McSpadden's Credibility and the Pain Standard

McSpadden contends the ALJ erred in discounting his subjective complaints as a result of his narcolepsy. McSpadden's complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Edwards* 937 F.2d at 584. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b); Social

Security Ruling ("SSR") 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes he has an impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d); 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. To discredit the plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1225-26.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1546, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 744 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . . whether [the] ALJ could have reasonably credited [McSpadden's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

McSpadden stated he has not had a full-time job since March 2017 and that narcolepsy was his main impediment to maintaining employment. (Tr. at 40, 46.) The ALJ noted McSpadden's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, satisfying part of the pain standard. (Tr. at 23.) However, the ALJ found McSpadden's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*.) The ALJ reviewed a variety of evidence to support his conclusion, including objective medical evidence and treatment history. (Tr. at 23-26.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ noted the objective medical evidence does not support the disabling symptoms and limitations alleged by McSpadden. (Tr. at 23-24.) McSpadden reported difficulties with being tired, making it to work on time, and feeling like he never got enough sleep, but he did not regularly go back for treatment with his sleep specialists at Dekalb Neurology. (Tr. 50-52, 370, 390.) Despite McSpadden's complaints that he was still not sleeping enough, he failed to seek treatment during the year between his visit in January 2019 and his prior visit in January 2018. (Tr. at 370-71, 390-91.) McSpadden also reported to his doctor in January 2019 that he was not taking anything for his narcolepsy. (Tr. at 391.) McSpadden's doctors prescribed medication, exercise and dietary changes, and advised him to continued

using his CPAP machine at night, which he stated helped with his symptoms, but more aggressive treatment or surgery was never recommended. (Tr. at 249-97, 302, 329-65, 370-73, 390-94.) Additionally, McSpadden asserted that he had to stop taking the medications prescribed for his narcolepsy because they interfered with his prescriptions for anxiety and depression. (Tr. at 54-55, 256, 269, 329, 334.) *See Johnson v. Chater*, 108 F.2d 942, 947 (8th Cir. 1997) (noting claimant's failure to take prescription pain medication undermined claimant's complaints of disabling pain). The ALJ properly noted this testimony is internally inconsistent with McSpadden's assertion that narcolepsy is primarily what keeps him from working. (Tr. at 25.) The ALJ properly found that McSpadden's lack of desire for additional medication or more aggressive treatment for his narcolepsy was inconsistent with his allegations of disabling symptoms.

The ALJ articulated reasons in great detail for finding McSpadden's subjective complaints were inconsistent with the medical evidence of record. Substantial evidence supports the ALJ's determination to give little weight to McSpadden's testimony.

## IV. CONCLUSION

Upon review of the administrative record and considering all of McSpadden's arguments, the undersigned finds the Commissioner's decision is supported by

substantial evidence and is in accord with applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.  A separate order will be entered.

**DONE** this 30th day of July, 2021.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE